UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **NATHAN CLARK,** | 2:20-CV-13078-TGB-DRG |
| Plaintiff, | HON. TERRENCE G. BERG |
| vs. | |
| **BOAT HOLDINGS, LLC, and POLARIS INC.,** | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND STRIKING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (ECF NO. 32)** |
| Defendants. | |

On July 4, 2020, Nathan Clark was injured by an allegedly faulty gate-latch mechanism on a Bennington-brand pontoon boat that was some 20 years old. In the two decades since the boat was manufactured, the Bennington brand has changed hands several times. Defendants, the current owners of the Bennington brand, have moved for summary judgment, arguing that they are not subject to the liabilities of Bennington's former owners. The central question of this case is whether relief for defects like the one that injured Nathan Clark may be pursued against the current owner of the Bennington brand under a theory of successor liability. Because there is a genuine issue for trial as to whether there was a "continuity of enterprise" through the several transactions at issue, Defendants' motion for summary judgment will be denied.

## I.  BACKGROUND

On July 4, 2020, Nathan Clark (then 15 years old) was seriously injured on Michigan's Au Sable River when his finger was pinched in the swing gate mechanism of a pontoon boat. Am. Compl., ECF No. 25, PageID.215. As a consequence of the injury, Clark's right pinky was amputated. *Id.* The boat, a 2001 model-year watercraft, had been sold under the "Bennington" brand name.

Bennington was founded as Bennington Marine Corporation ("Bennington Corporation") in 1997, a few years before the boat in question was manufactured. Roeder Dep., ECF No. 36-5, PageID.816. From its founding, Bennington Corporation assembled its boats at a manufacturing facility on Decio Drive in Elkhart, Indiana. In 2003, Bennington Marine Corporation was reorganized into Bennington Marine LLC ("Bennington LLC"), a limited liability company. There is some dispute about that transaction.

Defendants' corporate representative Andy Roeder testified that Bennington Corporation's founder-owners sold their stake in the company to "Summit Partners," a "private equity group," who reorganized Bennington as an LLC. Roeder Decl., ECF No. 33-2, PageID.529. Plaintiff, by reference to Summit Partners' website, argues that Summit Partners was a mere investor, and that "all evidence is that other than a name change, business continued as usual" at Bennington. Pl's. Resp., ECF No. 36, PageID.768.

Regardless of ownership, however, it is undisputed that the new entity, Bennington LLC, continued to manufacture Bennington-brand pontoon boats at the Decio Drive factory in a similar way for about six more years.

In 2009, Bennington's ownership structure changed again. According to Roeder, Bennington LLC "was shut down for period of time . . . due to poor business conditions," ECF No. 36-5, PageID.819, "ran out of operating capital," and defaulted on its obligations to PNC Bank, its primary lender. ECF No. 33-2, PageID.529. PNC, which held a security interest in substantially all of Bennington LLC's assets, organized a sale. ECF No. 36-5, PageID.820.

PNC Bank sold Bennington LLC's assets to two companies. Pontoon Boat, LLC ("Pontoon Boat") bought Bennington LLC's pontoon boat brands and the equipment and machinery necessary to manufacture pontoon boats. Fiberglass Boat, LLC bought Bennington LLC's fiberglass "deck boat" business.[1] ECF No. 36-5, PageID.804. Pontoon Boat, LLC, was a wholly owned subsidiary of Boat Holdings, LLC.

Under the terms of the sale, Pontoon Boat did not acquire any of Bennington LLC's liabilities for personal injury or products liability claims, or any of its contracts, leases, or license agreements. Independent of the purchase agreement, Pontoon Boat leased the real estate at Decio

---

[1] The deck boat transaction is not relevant to this suit.

Drive that had been previously occupied by Bennington. ECF No. 36-5, PageID.804.

By December of 2009, less than a month after purchasing Bennington LLC's assets, Pontoon Boat began manufacturing Bennington-brand pontoon boats at the Decio Drive location using the same machinery, dies, tooling, and other equipment that had been used by Bennington LLC. ECF No. 36-5, PageID.810-11. Pontoon Boat continues to build Bennington-brand boats at the Decio Drive facility. Today, Pontoon Boat is owned by Polaris, a manufacturer of outdoor recreation vehicles; in 2018, Boat Holdings merged with Polaris Boats, LLC.[2] Since that transaction, Pontoon Boat, now owned by Polaris, has continued to produce pontoon boats under the Bennington brand at the Decio Drive facility. ECF No. 36-5, PageID.815-16.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[2] Polaris Boats LLC is a wholly owned subsidiary of Polaris Sales, Inc., which is itself a wholly owned subsidiary of Polaris Industries Inc., which in turn is a wholly owned subsidiary of Polaris Inc. Def's Mot., ECF No. 32, PageID.504; Roeder Dep., ECF No. 36-5, PageID.796-97.

On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. "[A] mere scintilla of evidence in support of the nonmovant's position is not sufficient to create a genuine issue of material fact." *Towner v. Grand Trunk Western R. Co.*, 57 Fed. App'x. 232, 235 (2003) (citing *Anderson*, 477 U.S. at 251-52). Rather, the non-moving party must present sufficient evidence as to each element of the case such that a trier of fact could reasonably find for the plaintiff. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

The central dispute in this matter is whether Pontoon Boat LLC, now owned by Polaris, is a successor in interest to Bennington Marine Corporation. That is, did liability for the allegedly defective boat survive through the three transactions between Bennington Marine Corporation, the boat's original manufacturer, and the present incarnation of Pontoon Boat LLC as a subsidiary of Polaris.

Plaintiff asserts that there is a continuity of enterprise from Bennington Marine Corporation to Bennington Marine LLC, to Pontoon Boat LLC, to Pontoon Boat LLC as a subsidiary of Polaris. Defendants disagree, arguing that the chain of successor liability was broken by the second transaction—the 2009 deal in which Pontoon Boat LLC purchased the assets of Bennington Marine LLC from PNC Bank.

Defendants do not argue that either the Bennington Corporation–Bennington LLC transaction or the Pontoon Boat–Polaris transaction severed the chain of successor liability. And a claim for successor liability is not defeated merely because a defendant is separated from the original seller of a product by more than one transaction. As another court in this district has explained, a successor defendant's "twice removed status" from the original manufacturer of a defective product "does not appear to be legally significant." *Korzetz v. Amsted Indus., Inc.*, 472 F. Supp. 136, 144–45 (E.D. Mich. 1979). Where a manufacturer "continue[s] the business" that the original manufacturer established, successor liability

6

is not negated even if the defendant is two transactions removed from the original manufacturer. *Id.*; *see also Foster v. Cone-Blanchard Mach. Co.*, 460 Mich. 696, 704–05 (1999) (explaining that "in the appropriate case a tertiary successor might be liable for a manufacturer's defective product[.]").

Under Michigan's "traditional rule" of successor liability, when a successor corporation purchases a predecessor corporation's assets for cash, the successor is ordinarily not responsible for the predecessor's liabilities. *Commonwealth Land Title Ins. Co. v. Metro Title Corp.*, 315 Mich. App. 312, 315–16 (2016). That general rule is subject to five "narrow" exceptions. *Id.* Plaintiff does not argue that any of those five narrow exceptions applies.

But a successor's liabilities in tort for faulty products—like the allegedly defective boat here—are not so easily discharged. Michigan courts do not apply the "traditional rule" to those sorts of claims but instead, to avoid leaving a person injured by a defective product without recourse when the original manufacturer no longer exists, recognize liability based on a "continuity of enterprise" between a predecessor and a successor corporation in the products liability context. *See Turner v. Bituminous Cas. Co.,* 397 Mich. 406, 429 (1976).

In *Turner*, the Michigan Supreme Court explained that courts must consider the "totality of the transaction," and identified several factors: (1) whether there is continuity of the predecessor corporation's

management, personnel, physical location, assets, and general business operations; (2) whether the predecessor corporation ceases its ordinary business operations and dissolves; (3) whether the purchasing corporation assumes the liabilities and obligations of the seller ordinarily necessary for the continuation of normal business operations; and (4) whether the buyer corporation held itself out to the world as the effective continuation of the seller corporation.[3] *Id.* at 430. No single factor is dispositive. Each must be weighed and balanced against the others to "determine if the totality of the transaction preponderates in favor of imposing successor liability." *Pelc v. Bendix Mach. Tool Corp.*, 111 Mich. App. 343, 354–55 (1981).

### a. Whether there was continuity of Bennington LLC's management, personnel, physical location, assets, and general business operations

The first *Turner* factor asks whether there has been a continuity of management, personnel, physical location, assets, and general business operations. The record suggests that there was continuity of personnel of after Pontoon Boat purchased Bennington LLC's assets. Roeder testified

---

[3] Some courts have concluded that whether the buyer corporation holds itself out as a continuation of the seller is not an independent factor, but is instead part of the first *Turner* factor (whether there is a continuation of the general business operations). *See, e.g.*, *Neagos v. Valmet-Appleton, Inc.*, 791 F. Supp. 682, 690 n. 7 (E.D. Mich. 1992). Here, the Court will address them as separate factors because the distinction is not particularly material, Michigan's state courts tend to treat them as two separate factors, and the parties have as well.

that after the asset transfer, those working at the Decio Drive factory were employed by Pontoon Boat, but had previously worked for Bennington LLC at the same location.[4] ECF No. 36-5 PageID.812, 823-24.

As to management, the record is not clear. No evidence introduced by either party speaks to the continuity or discontinuity of the management personnel or structure between Bennington LLC and Pontoon Boat.[5]

---

[4] Defendants argue that of the 715 employees currently working for the Bennington brand, only 45 previously worked for Bennington LLC. But Bennington LLC has not existed for nearly a decade and a half. The question, instead, is how many of Bennington LLC's employees went to work for Pontoon Boat after *that* earlier transaction.

[5] A federal court in Texas hearing a contract dispute between a boat dealer and one of Bennington's iterations described the relationship between the entities as follows:

> Defendant Pontoon Boat, LLC ("Pontoon") is a Delaware limited liability company that was formed by employees of Bennington [LLC] on November 11, 2009, in order to purchase the assets of Bennington. In late 2009, Pontoon acquired Bennington [LLC] through an asset purchase agreement.

*Texas Marine & Brokerage, Inc. v. Bennington Marine, LLC*, 2012 WL 12888827, at *1 (E.D. Tex. Oct. 17, 2012), report and recommendation adopted, 2012 WL 12892168 (E.D. Tex. Nov. 9, 2012). That opinion went on to note that at least one of Bennington LLC's officers became an officer at Pontoon Boat, explaining that the officer "went from being a vice president of Bennington [LLC] to a vice president of Pontoon, and that he had the authority to contract on behalf of either of these companies." *Id.* at *4. While of interest, these facts have not been established by evidence before this Court, so they will not be given any weight.

Pontoon Boat also continued operations at Bennington LLC's physical location. The machinery, dies, tooling, and parts necessary to build pontoon boats "stayed" at the Decio Drive facility throughout the transfer. *Id.* at PageID.810–11. Within a month of the asset transfer agreement being signed, Pontoon Boat was building Bennington-brand pontoon boats at the same Decio Drive facility.

Additionally, Roeder testified that Pontoon Boat acquired substantially all of Bennington LLC's assets. ECF No. 36-5, PageID.809 ("Q: So as of December 10, 2009, anything that had a Bennington name on it then was owned by Pontoon Boat, LLC? A: I think that's correct.").

Finally, Pontoon Boat continued Bennington LLC's general business operations. Pontoon Boat continued to build Bennington-brand pontoon boats at the same facilities, housed its management in the same offices, and engaged in substantially the same business. Indeed, in his deposition, Roeder agreed that "Polaris has continued the business of Bennington Marine, that being the manufacture[] of pontoon boats under the Bennington name." ECF No. 36-5, PageID.818.

Defendants assert that there was no continuity of ownership between Bennington LLC and Pontoon Boat. But common ownership is not required under the more relaxed successor liability rule that Michigan law applies in the products liability context. *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994) (explaining that *Turner* encompasses "situations where there was no common identity of

ownership" between predecessor and successor corporations). And even if continuity of ownership were relevant, the ownership of Bennington LLC and Pontoon Boat is not entirely clear. Steven Vogel was one of Bennington's original founders in 1997. ECF No. 33-2, PageID.529. Vogel was also the president of both Bennington Corporation at least as of November, 2003. ECF No. 37-1, PageID.864 (filed under seal). Documents also identify Vogel as a member-manager of Boat Holdings, the owner of Pontoon Boat. ECF No. 37-2, PageID.873 (filed under seal). Thus Vogel was involved with the company both before and after the critical 2009 transaction. There is, however, evidence that Bennington LLC was owned (at least in part) by Summit Partners, a venture capital firm, before being sold to Pontoon Boat and Boat Holdings. ECF No. 33-2, PageID.529. In any event, common ownership is not required under *Turner*.

Ultimately, the first *Turner* factor weighs heavily in favor of a finding of successor liability.

### b. Whether Bennington LLC ceased its business operations as soon as practicably possible

That a seller corporation ceases operations, liquidates itself, and dissolves soon after its assets are sold generally weighs in favor of the imposition of successor liability. *Pelc*, 111 Mich. App. at 353–55. Conversely, that a seller corporation is in bankruptcy and a buyer

acquires its assets as part of an already-ongoing liquidation weighs against a finding of successor liability. *Id.*

The record is not wholly clear on when Bennington LLC ceased operations. In a supplemental declaration, Roeder attests that "in 2009, [Bennington LLC] ran out of operating capital and could not service its debt obligations to [PNC Bank]." ECF No. 33-2, PageID.529. But the record does not indicate when PNC Bank acquired Bennington LLC's assets and began attempting to sell them. And Roeder could not say whether Bennington LLC continued to manufacture boats while PNC Bank was selling off the assets. Nor does the record show that there was any public advertisement or offering of Bennington LLC's assets. Roeder testified only that Bennington LLC "was shut down for periods of time in 2009 . . . due to poor business conditions." ECF No. 36-5, PageID.819.

In any event, though the record is not crystal clear, it appears that Pontoon Boat purchased Bennington LLC's assets from PNC Bank as part of a liquidation sale. That fact tends to weigh against a finding that Pontoon Boat was a continuation of Bennington LLC's enterprise.

### c. Whether Pontoon Boat assumed the liabilities necessary for the continued operation of Bennington LLC's business

Under this third factor, a finding of successor liability may be supported if the purchasing corporation assumes the liabilities necessary for the uninterrupted continuation of normal business operations, such as "assumption of liability for the mortgage, past taxes, and insurance on

the [building where the corporate offices were located] and liability for the payment of workers' compensation for the employees that it hired from [the predecessor]." *Neagos v. Valmet-Appleton, Inc.*, 791 F. Supp. 682, 691 n. 8 (E.D. Mich. 1992) (citing *Fenton Area Public Schools v. Sorensen–Gross Constr. Co.*, 124 Mich. App. 631, 643–44, (1983)) (alteration in original).

Polaris argues that Pontoon Boat never assumed the liabilities of Bennington LLC, highlighting that the asset purchase agreement disclaims any assumption of liabilities "with respect to personal injury or products liability claims, equipment leases, license agreements or contracts." ECF No. 37-3, PageID.883–84. So this factor would appear to weigh against the imposition of successor liability.

But the facts as described by Roeder suggest that Pontoon Boat may have adopted at least some of the liabilities necessary to continue Bennington LLC's business uninterrupted, such as its contracts with suppliers and boat dealerships and wage and benefits obligations to the workers it hired from Bennington LLC. Similarly, Roeder described Bennington (both before and after the 2009 transaction) as "largely an assembly company" that assembled boats with parts purchased from many suppliers and sold boats through a network of authorized dealers. ECF No. 36-5, PageID.821–22.

Drawing all reasonable inferences in favor of the non-moving plaintiff the record suggests that, to continue building and selling

13

Bennington-brand boats essentially uninterrupted, Pontoon Boat continued the preexisting relationship with many or most of Bennington LLC's suppliers and dealers. Within a month of the asset purchase, Pontoon Boat was manufacturing Bennington-brand boats at the Decio Drive factory. ECF No. 36-5, PageID.811–12. It would seem difficult for Pontoon Boat to continue Bennington LLC's operations so seamlessly— within a matter of weeks—without Pontoon Boat assuming the latter's liabilities under existing contracts. Nevertheless, because the sales agreement disclaims any assumption by Pontoon Boat of Bennington LLC's liabilities, this factor weighs against the imposition of liability.

### d. Whether Pontoon Boat held itself out as the effective continuation of Bennington LLC

The fourth *Turner* factor directs courts to ask whether the purchaser corporation has held itself out as the effective continuation of the seller corporation by, for example, adopting its name "to take advantage of any good will that may have been associated with the name." *Fenton Area Pub. Sch. v. Sorensen-Gross Const. Co.*, 124 Mich. App. 631, 644 (1983). That a purchaser corporation holds itself out as a continuation of a seller corporation appears to be a necessary but not sufficient condition for successor liability under Michigan law. *Pelc*, 111 Mich. App. at 354 ("While [cases applying *Turner*] have referred to the purchasing corporation as being estopped from denying liability when it has affirmatively held itself out to the world as the effective continuation

14

of the seller corporation, none of the cases have justified imposition of liability solely upon this one factor."); *Bagoly v. The Kroger Co.*, 1997 WL 33353228, at \*4 (Mich. Ct. App. Apr. 4, 1997) (affirming finding of no successor liability where first three Turner factors were met but buyer corporation did not hold itself out as a continuation of the seller).

Defendants concede that Pontoon Boat held itself out as a continuation of Bennington. Def's. Mot., ECF No. 32, PageID.512 ("Pontoon Boat LLC (and later Polaris Boats LLC) continues to manufacture pontoon boats bearing the Bennington brand name"). The now Polaris-owned Pontoon Boat (which operates under the Bennington name) also represents on its website that "Bennington" was founded in 1997, further demonstrating that the current entity holds itself out as a continuation of the earlier-founded Bennington Corporation. Roeder Dep., ECF No. 36-5, PageID.816. So this factor weighs in favor of imposing successor liability.

### e. Whether the totality of the circumstances weighs in favor of a finding that Pontoon Boat was a continuation of Bennington LLC's enterprise

Considering the totality of the circumstances, the Court is persuaded that a reasonable juror crediting Plaintiff's evidence could conclude that Pontoon Boat was a continuation of Bennington LLC's enterprise. First, virtually every aspect of the most important factor— whether there has been a continuity of management, personnel, physical location, assets, and general business operations—weighs in favor of a

finding of successor liability. *See Turner*, 397 Mich. at 429 (explaining that the first factor is "perhaps of greatest significance"); *Korzetz v. Amsted Indus., Inc.*, 472 F. Supp. 136, 143–44 (E.D. Mich. 1979) ("The fact that the transferor is not dissolved immediately or does not assume all liabilities ordinarily necessary for uninterrupted continuation of normal business operations, does not conclusively establish discontinuity of interest when there is other strong and convincing evidence of continuity of enterprise."). So too does the fourth factor. While the facts necessary to weigh the second and third factors are somewhat unclear, even assuming they weigh against liability, the first and fourth factors weigh heavily in favor.

Second, the cases to which Defendants point in which no continuity of enterprise was found are distinguishable. In *Thompson v. Mobile Aerial Towers, Inc.*, 862 F. Supp. 175, 178 (E.D. Mich. 1994), no continuity was found where a buyer corporation hired only 10 of the seller's 100 to 200 employees and only one officer, moved physical locations, and established a new dealer network and distribution system distinct from that of seller corporation. But here, Pontoon Boat appears to have hired substantially all of Bennington LLC's employees and remains in the same physical location. Information about Pontoon Boat's distribution network and dealer network is not before the Court.

Similarly, in *Pelc v. Bendix Mach. Tool Corp.*, 111 Mich. App. 343, 353 (1981), the Michigan Court of Appeals explained that there was no

16

continuity where a buyer corporation hired one manager and 8 of 150 to 200 non-managers, operated out of seller's former plant for three months, and purchased just eight percent of the seller's assets. But here, Pontoon Boat purchased substantially all of Bennington LLC's assets, hired their employees, and permanently occupied their physical location.

Finally, the Court considers *Starks v. Michigan Welding Specialists, Inc.*, 2005 WL 3179647, at *4 (Mich. Ct. App. Nov. 29, 2005). There, the predecessor corporation dissolved and it assets were sold by a foreclosing bank. Here, while it is not entirely clear when Bennington LLC ceased operating, it appears that its assets were sold by PNC Bank. But, unlike Pontoon Boat, the successor corporation in *Starks* never held itself out as a continuation of the predecessor. Instead, the successor "sent a letter to its customers and suppliers expressly stating" that the predecessor corporation had gone out of business and that the successor was "a new corporation with different ownership." *Id.* Also, it does not appear that *Starks* was a products liability case, so the rationale in *Turner* and its progeny of providing a remedy to an injured party when the original corporation is defunct would not have been applicable. Finally, in *Starks* the appellate court concluded that there was "insufficient continuity of enterprise to justify the imposition of successor liability." *Id.* In this case the facts suggest otherwise.

Ultimately, based on the totality of the transaction, a reasonable juror could conclude that Pontoon Boat was a continuation of Bennington

LLC's enterprise. Pontoon Boat occupied the same facility, employed the same people, used the same machines and tooling, and sold the same products under the same brand name. Further, the circumstances of the transaction are somewhat murky. At least one person, Steven Vogel, was involved with Bennington LLC—at some point before the sale—and was indisputably involved with Pontoon Boat after the sale. Accordingly, Defendants' motion will be denied.

### f.  Plaintiff's cross-motion for summary judgment

As part of his response to Defendants' motion for summary judgment, Plaintiff also moves for summary judgment. Local Rule 7.1(i) provides that "[m]otions must not be combined with any other stand-alone document . . . a counter-motion must not be combined with a response or reply." Further, Plaintiff did not comply with Local Rule 7.1(a)'s requirement that a motion must state whether concurrence in the requested relief was sought and obtained. Additionally, the motion is untimely. Although discovery was still open when the motion was filed, the Court-ordered dispositive motion cut-off date was May 27, 2022, but Plaintiff's motion was not filed until June 17, 2022. *See* Fed. R. Civ. P. 56(b). Accordingly, the Court will strike Plaintiff's cross-motion for summary judgment.

## IV. CONCLUSION

For the reasons set out above, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 32) is **DENIED**.

It is **FURTHER ORDERED** that the Motion for Summary Judgment included in Plaintiff's Response (ECF No. 36) is **STRICKEN**.

     **IT IS SO ORDERED.**

Dated: March 14, 2023    s/Terrence G. Berg
                                  TERRENCE G. BERG
                                  UNITED STATES DISTRICT JUDGE